# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**GREENWALD FAMILY
LIMITED PARTNERSHIP,**
      Plaintiff,

   v.                                                   Case No. 20-CV-0048

**VILLAGE OF MUKWONAGO,**
      Defendant.

## DECISION AND ORDER

The Greenwald Family Limited Partnership ("GFLP") brings this action against the Village of Mukwonago ("The Village") alleging violations of its rights to equal protection and due process under the United States Constitution, violations of its rights to equal protection and due process under the Wisconsin Constitution, and tortious interference with contract under Wisconsin law. GFLP owns several properties in the Village, and its claims arise out of disputes regarding the use and development of those properties. The defendant has moved for summary judgment.

### I.    Background

A. Chapman Farms

In 2014, GFLP offered to purchase four-plus acres of land in the area known as Chapman Farms. The offer was contingent upon municipal approval of a certified survey map ("CSM"). A CSM, as relevant here, is a document used to record divisions of a property into smaller lots and must be submitted to a local governing body and plan commission for approval before the land division can occur. *See* Wis. Stat. 236.34. The Village Plan Commission voted to approve the CSM conditioned on a developer's

agreement requiring, among other things, that GFLP construct a primary access road and install utilities to serve the subject lot. GFLP did not submit a developer's agreement that met the Village's requirements and abandoned its plans for the property. It withdrew its offer to purchase and its CSM application. Subsequently, the Village purchased a parcel of land which included Chapman Farms, approved its own CSM, divided the property, held it for two years and built a primary access road and utilities. Eventually, the Village sold the property to Anderson Commercial which submitted a CSM to further divide the land and signed a developer's agreement requiring it to construct interior access roads and infrastructure as the property was developed.

### B. Marshview Drive Extension

GFLP owns a strip of property which includes an unimproved roadway that runs behind several businesses on the east side of Highway 83. The businesses use the unimproved roadway as an access road known as the "Marshview Drive Extension." GFLP asked the Village to improve and maintain the road. The Village declined the request unless GFLP agreed to sign a developer's agreement committing it to developing the surrounding land.

### C. Tree Removal

In 2013, the Village agreed to remove trees from a parcel owned by GFLP located on Highway 83. Subsequently, the Wisconsin Department of Natural Resources ("WDNR") indicated that it opposed the removal of the trees, and the Village has not removed them.

### D. Assisted Living Center

In 2015, GFLP approached the Village about securing tax incremental funding ("TIF") for an assisted living development on land that it owned, but the Village denied its request.

### E. Special Assessment Against GFLP Properties

Between 2015 and 2019, The Village made various improvements to the Chapman Farms property including installing a sanitary sewer, a water main, pavement, and traffic signals, and in December 2019 imposed special assessments on the surrounding properties to pay for them.

### F. DeDack Drive

GFLP owns property known as East Wolf Run which consists of 47 acres of undeveloped land. The DeBack family owned an adjacent 40-acre property. Neither property had a direct access road. The Village's official map calls for the construction of an access road at some time in the future to run through both properties (the "Wolf Run Extension"). In 2016, a developer proposed to build a mixed use development on the DeBack property. The DeBack family proposed that a road be built connecting the development to the Village ("DeBack Drive"). GFLP requested that the Village immediately construct the Wolf Run Extension instead. The Village decided to build DeBack Drive because it believed it was the cheaper option. GFLP then asked the Village to build both roads. The Village declined the request unless GFLP would commit to developing the parcel that it owned.

## II. DISCUSSION

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

GFLP makes claims under the Equal Protection Clause of the Fourteenth Amendment, which protects individuals from discrimination by government. *See, e.g., Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). The typical equal protection case involves discrimination by reason of race, national origin, or sex. *Id.* However, the Clause also prohibits the singling out of a person or entity for differential treatment without a rational basis. *Id.* Class-of-one equal protection claims are based on the principle that similarly situated people or entities must be treated alike unless there is a rational basis for treating them differently. *Chicago Studio Rental, Inc. v. Ill. Dept. of Commerce*, 940 F.3d 971, 979 (7th Cir. 2019). In order to succeed, the plaintiff must show that: (1) it has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment. *Id.* at 979–80.

Generally, class-of-one claimants must present evidence of a similarly situated entity at the summary judgment stage. *FKFJ, Inc., v. Village of Worth*, 11 F.4th 574, 589 (7th Cir. 2021). In a limited number of cases, however, where animus is readily apparent, the Seventh Circuit has overlooked the failure to present a comparator. *See, e.g., Swanson*, 719 F.3d at 784 (7th Cir. 2013). In those cases, the plaintiff was able to show that he was targeted out of hostility, and that there was no conceivable rational basis for

4

the defendant's action. *See, e.g., Geinosky v. City of Chicago*, 675 F.3d 743, 747–48 (7th Cir. 2021) (finding that recipient of twenty-four bogus parking tickets over a fourteen-month period did not have to identify others who were similarly situated to "help distinguish between ordinary wrongful acts and deliberately discriminatory denials of equal protection"). When there is a conceivable rational basis for the action, however, "evidence of a similarly situated entity is needed '[t]o achieve clarity.'" *FKFJ, Inc.*, 11 F.4th at 590 (quoting *Swanson*, 719 F.3d at 784). In other words, in order to show that a given action was motivated solely by animus, GFLP must negate any conceivable rational basis for the action.

GFLP argues that a class-of-one equal protection claim should not fail simply because the Village or the court can conceive of a rational basis. GFLP is mistaken. "If [the court] can come up with a rational basis for the challenged action, that will be the end of the matter–animus or no." *Fares Pawn, LLC v. Indiana Dep't of Fin. Institutions, 755 F.3d 839, 845 (7th Cir. 2014)*. If a conceivable rational basis can be identified for the different treatment, the plaintiff's claim is defeated; it does not need to be the actual basis for the defendant's decision. *Chicago Studio Rental*, 940 F.3d at 980 (citing *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013). GFLP contends that the Village bore an animus toward it. However, "[i]t is only when courts can hypothesize no rational basis for the action that allegations of animus come into play." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008). Because I find the Village had a rational basis for each of its actions, I need not further consider the allegations of animus.

5

### A. Chapman Farms Property

GFLP claims that the Village intentionally treated GFLP differently than others similarly situated when it conditioned the approval of its CSM for the Chapman Farms Property on GFLP's willingness to sign a developer's agreement guaranteeing the immediate construction of a primary access road and utilities. GFLP points to Anderson Commercial as a similarly situated entity. Unlike GFLP, when Anderson Commercial submitted its CSM, it was not required to agree to immediate construction of an access road but rather was allowed to build infrastructure as it developed the land. Further, GFLP argues, Anderson Commercial was not required to reimburse the Village for the cost of building the primary access road. GFLP's argument fails because the Village had a rational basis for treating the two entities differently. Specifically, the Village did not require Anderson Commercial to immediately build a primary access road and utilities, as it did GFLP, because the Village had already built the road and utilities. GFLP's contention that the Village discriminated against it by not requiring Anderson Commercial to reimburse the Village for the construction of the access road is also unpersuasive because unlike Anderson Commercial GFLP did not purchase land from the Village and accordingly was also not subject to a reimbursement order.

GFLP also argues that the Village acted without a conceivable rational basis when it conditioned the approval of a CSM on GFLP's willingness to construct a primary access road and utilities. This argument fails because the Village had a rational basis for imposing this requirement, namely that it wished to prevent parcels west of the proposed CSM from becoming landlocked and without access to roads or utilities. GFLP states that neither the seller of the property nor the Wisconsin Department of Transportation favored the

construction of the primary access road, but the views of these entities is not evidence that the Village's position lacked a rational basis. GFLP next asserts that the Village had no authority to require a developer's agreement as a condition of approving the CSM. If this is true, GFLP might have a state law remedy but it is irrelevant to GFLP's equal protection claim. Finally, GFLP seems to argue that the Village violated its rights when it purchased the Chapman Farms property, but this contention is also irrelevant to its constitutional claim.

### B. Marshview Drive Extension

GFLP argues the Village violated its right to equal protection when it declined to pay for improvements to the Marshview Drive Extension. But the Village had a rational basis for this decision in that it did not believe that the improvements sought would generate sufficient revenue, in the form of an enlarged tax base, to support the costs of the improvement. It is rational to decline to spend money without an expectation of an adequate return.

### C. Tree Removal

GFLP argues that the Village lacked a conceivable rational basis for its decision not to remove trees from GFLP's land. But once again the Village had a rational basis for this decision, namely that it believed that it needed the consent of the WDNR to remove the trees which consent it had not yet received. GFLP argues that consent from the WDNR was unnecessary but presents no evidence that the Village lacked a good faith belief that it was.

### D. Assisted Living Center

GFLP argues that the Village violated its right to equal protection when it refused to provide TIF funding for the development of an assisted living center on one of its properties but provided TIF funding for other projects. The Village responds that it denied GFLP's request because at the time GFLP made the request, the funding generated by the relevant Tax Incremental District, TID#3, had been expended. Even assuming that the Village would have been obliged to provide TIF funds for GFLP's project had funds been available, the absence of TIF funds surely provided a rational basis for not doing so. GLFP points to a June 11, 2015 email that the Village sent to a developer, Todd Wilkins, as evidence that TIF funding was available, but GFLP provides no evidence as to when its request was denied. Thus, the email is insufficient to raise a question of fact as to whether funds were available.

### E. Special Assessments on GFLP Properties

GFLP takes issue with the special assessments levied on properties surrounding Chapman Farms. But the Village also assessed properties surrounding Chapman Farms not owned by GFLP, and it had a conceivable rational basis for all the assessments namely that the properties benefitted from the improvements to the property.

### F. DeBack Drive

GFLP argues that the Village violated its right to equal protection when it chose to construct DeBack Drive before moving forward with the Wolf Run Extension. But the Village also had a rational basis for this decision. The Village states that it chose to build DeBack Drive because it believed it was the less expensive option, and a wish to save money is certainly rational. GFLP disputes that DeBack Drive was less expensive but

8

presents no evidence that the Village lacked a good faith belief that it was. GFLP also argues that the Village lacked an expert opinion indicating that DeBack Drive was the cheaper option, but such an opinion was not required to establish the Village's good faith belief. GFLP also argues that the Village's decision not to build both roads lacked a rational basis. However, the Village had a rational basis for delaying construction of the Wolf Run Extension, namely that it did not want to proceed until GFLP agreed to develop the surrounding property. Not wanting to spend money without some assurance of a return is rational. GFLP also argues that the reasons that the Village proffers for choosing DeBack Drive are false, but I have already determined that a conceivable rational basis for the decision existed and that ends the inquiry. *Fares Pawn*, 755 3d at 845 ("If we can come up with a rational basis for the challenged action, that will be the end of the matter.")

### G. The Village's Argument regarding Discretionary Land Use Decisions

The Village argues that GFLP's class-of-one claims fail not only because it had a rational basis for all of its decisions but for an additional reason. In *Engquist v. Or. Dep't of Agric.*, the Supreme Court held that public employees cannot bring class-of-one claims against their employers because the class-of-one theory is a "poor fit" in contexts which "involve discretionary decision making based on a vast array of subjective, individualized assessments." 553 U.S. at 603, 605 (2008). The Village argues that because land use decisions similarly involve discretionary decision making based on a vast array of subjective, individualized assessments, GFLP's claims fail under the reasoning of *Engquist*. GFLP does not respond to this argument. Because I have found that GFLP's class-of-one claims fail because the Village had a rational basis for its decisions, I need

9

not decide whether class-of-one claims regarding discretionary land use decisions similarly fail.

### H. State Law Claims

GFLP has also asserted state law claims against the Village. Under 28 U.S.C. § 1367(c), a federal court may decline to exercise supplemental jurisdiction over state law claims. And when the federal claims in a case have been disposed of, the usual practice in this circuit "is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Nothing in this case suggests that I should depart from the usual practice.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendant's motion for summary judgment at ECF no. 31 is **GRANTED** with respect to all of GFLP's federal claims, and such claims are **DISMISSED**. It is further ordered that the remaining state law claims are **DISMISSED** without prejudice. The Clerk of Court is directed to enter judgment. **IT IS FURTHER ORDERED** that the defendant's motion for leave to file excess pages at ECF no. 38 is **GRANTED.**

Dated at Milwaukee, Wisconsin, this 3rd day of November, 2021.

s/Lynn Adelman<br>
LYNN ADELMAN<br>
United States District Judge